Kenneth D. MORTON, Assessor for
St. Louis County, Plaintiff–
Respondent,

v.

William R. BRENNER, et al.,
Defendants–Appellants.

No. 74558.

Supreme Court of Missouri,
En Banc.

Nov. 24, 1992.

As Modified on Denial of Rehearing
Dec. 18, 1992.

Aimee L. Smashey, R. Randall Turley,
Jefferson City, James Owen, Tom McCarthy, Sharon K. Zackula, Chesterfield, for
defendants-appellants.

John A. Ross, Dennis C. Affolter, Clayton, for plaintiff-respondent.

LIMBAUGH, Judge.

Taxpayers Tedford and Margaret Lewis and the members of the State Tax Commission appeal a judgment of the Circuit Court of St. Louis County in favor of County Assessor Kenneth D. Morton. The circuit court ruled that the Lewises' 50–unit apartment complex in St. Louis County should be classified as commercial property and not residential property for real estate tax purposes under § 137.016.1, RSMo Supp. 1991. We reverse.

Procedurally, the Lewises petitioned the State Tax Commission to overturn the determination by the St. Louis County Assessor that the apartment complex was commercial property. The tax commission ruled that 40 of the 50 apartment units should be assessed as residential property; the assessor, in turn, appealed to the Circuit Court of St. Louis County pursuant to the provisions of the Administrative Procedure Act, Chapter 536, RSMo. The circuit court held that the ruling of the State Tax Commission was neither supported by the evidence, nor was it a proper application of § 137.016.1(1) to the facts. This appeal followed.[1]

The question of the classification of real property as commercial or residential turns on the meaning and application of the term "structure" in § 137.016.1(1). In particular, we must decide whether the complex consists of just two large structures containing six connecting substructures, or instead, two rows of six separate structures. If the former, both structures are commercial; if the latter, five of the six structures in each row are residential. Because this issue requires us to construe a revenue law, § 137.016.1, we have exclusive jurisdiction. Mo. Const. art. V, § 3.

## I.

The facts critical to a resolution of this case are those that describe the physical configuration and characteristics of the apartment complex. These facts as determined by the State Tax Commission are largely undisputed.

The Lewises own a 50–unit apartment complex in St. Louis County. The complex is arranged in two rows, and the buildings or structures [2] in each row accommodate 25 apartment units. Each row has six two-story structures, five of which contain four apartment units and the other containing five units. Each of the 12 structures has individual and separate sewer, water, and electric lines and hookups. Furthermore, each structure has a separate entry with a foyer and a stairway to the second floor apartments, and there is no entry or direct access from one structure to another. The foundations for the structures, though they were poured separately, are "tied together with reinforcing bar," except at the midpoint of each row where there is a construction joint. Although the foundations are connected, they are offset horizontally from each other, and some lie at different elevations. In each row, the structures themselves abut one another and connect by way of a common, eight-inch concrete firewall, which extends continuously from the foundation to the roof and protrudes laterally through the exterior framework. These structural walls meet the criteria for the Building Officials and Code Administrators [BOCA] code, in that they have "sufficient structural stability under fire conditions to allow collapse of construction on either side without collapse of the walls...."

The Lewises built the 12 structures, one by one, during the years 1960 through 1963. Mr. Lewis testified that his purpose in constructing what he considers to be separate, distinct buildings was to enable him to partition or sell any of the 12 buildings individually. A drawing of the config-

---

1. Assessor has filed a motion to strike portions of taxpayers' reply brief. However, in our decision we do not rely on any of the information or argument from the reply brief other than that which was also set out in the original brief. The motion is moot.

2. There is a distinction between the terms "building" and "structure." All buildings are structures, but not all structures are buildings. In analyzing the application of § 137.016.1(1), however, the distinction is not pertinent; the words can be used interchangeably. The statute uses the term "structure;" we will do so as well.

uration of the apartment complex is attached.

## II.

We first address taxpayers' contention that the circuit court erred by applying the wrong standard of review. This Court reviews only the findings and decision of the administrative agency, not the judgment of the circuit court. Hence, the circuit court's error, if any, is not relevant to our review. *City of Cabool v. Missouri State Bd. of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985).

As stated earlier, the principal issue of this appeal involves the State Tax Commission's interpretation and application of the term "structure" as used in *§ 137.016.1(1)*. As such, the issue is purely a question of law. It is well-settled that "Administrative agency decisions based on the agency's interpretation of law are matters for the independent judgment of the reviewing court." *King v. Laclede Gas Co.*, 648 S.W.2d 113, 114 (Mo. banc 1983).

Nevertheless, taxpayers contend that *§ 536.140.3, RSMo 1986*, requires this Court to defer to the Commission's application of the term "structure." That section provides:

> Whenever the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts, the court may weigh the evidence for itself and determine the facts accordingly. The law applied by the agency as aforesaid may include the agency's own rules. In making such determination the court shall give due weight to the opportunity of the agency to observe the witnesses, and to the expertness and experience of the particular agency.

This claim is wholly without merit. In this case, where the critical facts are undisputed, there is no need for the reviewing court to weigh the facts independently. *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Comm'n*, 669 S.W.2d 548, 553 (Mo. banc 1984). Taxpayers misconstrue the purpose of *§ 536.140.3*. It is designed only to give a reviewing court the authority to weigh the evidence and arrive at its own factual determinations in cases in which the agency has merely applied the law to the facts at hand. It provides an exception to the general rule that requires a reviewing court to defer to an agency's findings of fact. But in no way does *§ 536.140.3* require the forbearance of a reviewing court where the agency's application of law to facts is contested. *St. Louis County v. State Tax Comm'n*, 562 S.W.2d 334, 337–38 (Mo. banc 1978).

## III.

The parties agree that the apartment complex, as real property, should be classified for tax purposes as either "residential property" or "commercial property." Taxpayers seek the benefit of the lower tax rates imposed for "residential property."[3] As defined in *§ 137.016.1(1)*, "residential property" is "all real property improved by a structure which is used or intended to be used for residential living by human occupants and which contains not more than four dwelling units...."

We are asked to determine the number of structures, if any, that qualify for residential treatment under the statute. The taxpayers count two rows of six separate structures, 12 total. In each row, five of the six structures contain only four dwelling units each and, thus, should be classified as residential property. Taxpayers concede that the sixth structure in each row contains five dwelling units and must be classified as commercial property.[4] On

---

**3.** The parties stipulated at the hearing before the State Tax Commission that if taxpayers' property were classified as commercial, it would be assessed at 32 percent of its market value; if classified as residential, it would be assessed at 19 percent.

**4.** A collateral issue—whether there can be both residential and commercial structures on a single parcel of real estate—is resolved by reference to *§ 137.016.2*. That section provides:

> Where real property is used or held for use for more than one purpose and such uses result in different classifications, the county

the other hand, assessor claims that there are only two structures, each of which contains 25 dwelling units and that each row is actually a single structure divided into six substructures. Because each of the two rows/structures contains more than four dwelling units, he argues that each should be classified as commercial property. To phrase the issue more specifically, we are asked whether the apartment complex consists of 12 separate, distinct structures or just two structures divided into 12 sections. To answer this question, we must ask another: What is a structure, or rather, what is a separate structure?

■ When we interpret statutory language, we must ascertain the intent of the legislature. In so doing, we consider the plain and ordinary meaning of the terms. *Rothschild v. State Tax Comm'n*, 762 S.W.2d 35, 37 (Mo. banc 1988). To that end, we refer to *Webster's Third New International Dictionary*, which defines structure as:

> 1: the action of building ... 2a: something constructed or built ...: a building of imposing size ... b: something made up of more or less interdependent elements or parts: something having a definite or fixed pattern of organization ...

This definition gives us the plain and ordinary meaning of the term "structure." But, using nothing more than the plain and ordinary meaning analysis, the term "structure" may apply in support of either taxpayers' position or assessor's position. This definition, applied to the facts, may allow a conclusion that there are just two structures which contain six sections each, and, at once a conclusion that there are 12 separate structures.

The effort to obtain a more meaningful and relevant interpretation of the term "structure" must begin with an examination of *Rothschild v. State Tax Comm'n*, *supra*. In that case, the taxpayer owned 11 separate, unconnected buildings located on the same parcel of real property. Each of the buildings contained just four dwelling units. But because the separate buildings were on the same parcel, the county assessor aggregated the number of units for a total of 44 and determined that the property was commercial. This Court disagreed and, in interpreting the language of § *137.016.1(1)*, held as follows:

> [T]he focus of the statutory classification is on the individual *structure*, not the identity of the owner or the number of dwelling units per parcel. Thus, real property improved by structures, none of which contain [sic] more than four dwelling units, is classified as 'residential' under the statutory scheme, regardless of the number of structures on the property, its location, or the identity of the owner.

*Rothschild*, 762 S.W.2d at 37. (emphasis in original).

Although we learn from *Rothschild* that a single parcel of property may have multiple structures, any of which may qualify for residential treatment, we must nevertheless determine what characteristics or elements must be present for a structure to be considered separate from all others.

Assessor contends that structures cannot be separate unless they are in no way connected with each other, i.e., they must be freestanding structures. Under this interpretation, many individual row houses, combinations of apartments, or townhouse units could not be considered separate structures simply because they are connected with others.

In a different argument, assessor suggests that owners of apartment complexes who desire residential treatment should be required to plat and subdivide improvements into structures having no more than four units. This would force the Lewises and others similarly situated to plat zero lot lines along the structural walls separating each structure and then to obtain ap-

assessor shall allocate to each classification the percentage of the true value in money of the property devoted to each use.... Implicit is a recognition that separate portions of the same property can be classified different-

ly. Said another way, the classification of one portion of a property does not preclude different classifications to the other portions.

proval of the subdivision from local government authorities.

In our opinion, however, separateness should be determined from the actual physical characteristics of the structures. The separateness created by the formal legal action of platting and subdivision is artificial, and it imposes an undue burden on the taxpayer.

■ Mindful of the rule that ambiguities in taxing statutes must be construed against the taxing authority and in favor of the taxpayer, *Cascio v. Beam*, 594 S.W.2d 942, 945 (Mo. banc 1980), we recognize, as did the State Tax Commission, that structures may indeed be separate even though they are connected. The configurations of dwelling units here are essentially combinations of structures or multiple structures that are separated, one from the other, by "party" or "common" walls that are also "structural" walls. Paradoxically, these are walls that serve both to connect and to separate. When connecting structures are not interdependent—that is, each maintains an individual physical integrity and each functions independently of the other—then they are separate structures. As the State Tax Commission noted, the best gauge of this separateness is the presence and quality of structural walls. We believe that structures are indeed separate when the connecting walls meet the following standards:

(1) The walls run continuously from the basement foundation to the roof with no structure-to-structure openings; and

(2) The walls are load or weightbearing, with the strength and stability to allow for the collapse of the structure on either side of the wall without the collapse of the wall itself or the structure on the other side.[5]

Applying these standards to the facts, it is clear that the Lewises' apartment complex consists of 12 separate structures divided by structural walls. The walls separating each structure run from the basement foundation to the roof with no structure-to-structure openings. They are load or weightbearing walls that will allow for the collapse of construction on one side without causing the collapse of the wall itself or the collapse of the construction on the other side. We recognize that there are many other apartment complexes with common or party walls that do not meet these standards. Those complexes will continue to be classified as commercial property. As for the Lewis property, ten *of the 12 structures, those with four dwelling* units each, shall be classified as residential. The two remaining structures, those with five units each, shall be classified as commercial.

The judgment of the circuit court is reversed.

All concur.

---

**5.** These standards are derived in part from the BOCA code definition of structural walls. *See* BOCA Basic/National Building Code, 1984, p. 278, § 14.07.1. The BOCA requirement that structural walls be constructed of noncombustible materials is not included.