72 P.3d 357 (2003)
205 Ariz. 427
COTTONWOOD AFFORDABLE HOUSING
v.
YAVAPAI COUNTY, et al.
No. TX 2001-000616.
Tax Court of Arizona.
May 9, 2003.
*358 Dawn R. Gabel of Steptoe & Johnson, Phoenix, for Plaintiff Cottonwood Affordable Housing.
Glenn M. Gustafson, Deputy County Attorney, for the Defendant Yavapai County.

OPINION
PAUL A. KATZ, J.

Nature of the Case
Plaintiff, Cottonwood Affordable Housing Ltd. Partnership ("Cottonwood") owns and operates a low-income housing project in Cottonwood, Arizona. This Arizona limited partnership was formed to construct and operate low income housing under the federal Low Income Housing Tax Credit ("LIHTC") program. Cottonwood's limited partners bought LIHTCs under that program. In assessing Cottonwood's property, the Yavapai County Assessor assigned a full cash value to the property of $2,121,859 for the 2002 and 2003 tax years. Cottonwood challenged this value claiming it was in excess of the true market value for the property. The parties agree the property should be valued via the income approach to value. However, the parties disagree as to what items of income should be used to arrive at the full cash value. Cottonwood contends the actual income and expenses of the project should form the basis for valuation. The County contends either, that market rents generated by regular commercial apartment complexes should be used to determine the value of the property via the income approach rather than actual rents collected by Cottonwood or the credits themselves should be added to the income stream.
This case presents several issues. The first issue is whether LIHTCs are intangible property. The second issue is whether LIHTCs should be included in the value of Cottonwood's property. And the third issue is whether the restrictions imposed by the LIHTC program should be considered in valuing Cottonwood's property.

The Low Income Housing Tax Credit Program
The Low Income Housing Tax Credit was created by the Tax Reform Act of 1986. It was codified at 26 I.R.C. § 42. Congress created the LIHTC to encourage new construction and rehabilitation of existing rental housing for low-income households and to increase the amount of affordable rental housing for low-income households. The LIHTC program authorizes the states to issue federal tax credits for the acquisition, rehabilitation, or new construction of affordable rental housing. To qualify for the LIHTCs, a project must have a portion of its units set aside for low-income households. The project's use of the property is restricted by deed to low income housing for at least fifteen years. The rents on the units are limited to a percentage of the qualifying income. After the state allocates tax credits to the developers of the low-income housing project the credits are usually sold to private investors in a limited partnership. The private investors use the tax credits to offset their tax liability. The money paid for the credits is used as equity financing to make up the difference between the development costs for a project and the non-tax credit financing that could be expected to be repaid from rental income. Investors can claim the credits for each year of a ten year credit period as long as a minimum percentage of the projects' units are rented to low-income *359 tenants at restricted rents for the fifteen year compliance period.

Legal Discussion
The Court finds there is no Arizona caselaw or authority on point. In reviewing the caselaw of various jurisdictions of the United States, the Court finds two cases involving the LIHTC program that are informative as to the issues presented in this case. Maryville Properties, L.P. v. Nelson, 83 S.W.3d 608 (Mo.App.2002), is a Missouri court of appeals case that involved a low-income housing project developed by Maryville Properties. One of the issues in the case dealt with the question of whether LIHTCs are intangible property. The assessor included the LIHTCs received by the limited partners in the valuation of the low-income apartment complex. The court of appeals found that LIHTCs are intangible property and should not be included in the appraisal. Maryville Properties, 83 S.W.3d at 617. The Maryville Properties court found that "LIHTCs are not characteristics of the property. Rather they are assets having direct monetary value." Id. at 616. LIHTCs do not have a direct effect on the income of the property. Id. at 616. "The value of the tax credits is to the owner of the property and not to the property itself." Id. at 616. The credits comprise the limited partners' interest in the partnership. Arizona recognizes an interest in a partnership as intangible. Arizona Tractor Co. v. Arizona State Tax Commission, 115 Ariz. 602, 604, 566 P.2d 1348, 1350 (App.1977).
This Court in determining how property should be appraised, would give strong deference to the Appraisal Institutes Uniform Standards of Professional Appraisal Practice ("USPAP") and the Advisory Opinions that govern the conduct of certified appraisers through out the United States, particularly where neither legislature nor courts have created such guidelines or precedent. The Arizona Administrative Code requires that our Arizona appraisers comply with USPAP when performing appraisals. Ariz. Admin. Code R4-46-601 (1998). In Advisory Opinion 14, the Appraisal Standards Board recognized that "LIHTCs are an example of an incentive that results in intangible property rights..."
The Court finds the credits constitute intangible property and should not be added to the value of Cottonwood's property or considered as part of Cottonwood's income stream. LIHTCs are intangible because they are sums of money being paid by the federal government as an incentive to invest in the project and are not income flowing from the rental of the property. If a limited partner's interest is sold the buyer will only receive the remainder of the credit, if any, and the seller may be subject to having the remaining credits recaptured. The tax credits will not significantly affect the marketability of the project, particularly if the property were to be resold at or near its tenth year of operation, because at that time the credits will have been exhausted and will play no significant part in any negotiations between a buyer and seller. If the interest is sold after any amount of time it will have to be sold at a steep discount. These tax credits are not an integral part of the real estate. They do not add to the value of the property as their use is limited to ten years and the project will continue for a minimum of fifteen years. Any value the credits may have is to the owner and not the property.
Cascade Court Ltd. v. Noble, 105 Wash.App. 563, 20 P.3d 997 (2001), is a Washington case that involved low-income housing projects that were subject to the rent restrictions required under the LIHTC program. One of the issues the case dealt with was the question of whether the rent restrictions mandatory under the LIHTC program should be taken into account for valuation purposes. The Washington Board of Tax Appeals (the "BTA") determined that the projects should be assessed as though there were no restrictions. The BTA further determined that the LIHTCs should be included in the estimation of value. The Court of Appeals reversed the BTA's determination. The Court in Cascade Court Ltd. states that Washington law, "requires that all property be assessed at one hundred percent of its `true and fair value in money.' The phrase `true and fair value in money' has been consistently interpreted to mean `fair market *360 value.'" Cascade Court Ltd., 105 Wash.App. at 567, 20 P.3d at 1000. The court of appeals held that in determining market value, any factor that might reasonably affect price negotiations between a buyer and seller must be considered. Id. at 567, 20 P.3d at 1000. As a buyer would not pay any price that was based on rents the buyer could not charge, restricted rents should be taken into account when the property is assessed. Id. at 570, 20 P.3d at 1001. The court in Cascade Court Ltd. noted that, "the deed restrictions affect the income-producing ability of the projects and thus affect their value." Id. at 571, 20 P.3d at 1002. Cascade Court Ltd. also found that, "tax credits are intangible personal property and thus are not subject to real property taxation." Cascade Court Ltd., 105 Wash.App. at 571, 20 P.3d at 1002.
Arizona, like Washington, requires that real property be valued at its full cash value or fair market value. Business Realty of Arizona, Inc. v. Maricopa County, 181 Ariz. 551, 553, 892 P.2d 1340, 1342 (1995) ("For tax purposes, Arizona values all property at full cash value.") The Arizona statute defines full cash value as, "the value determined as prescribed by statute. If no statutory method is prescribed, full cash value is synonymous with market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques." A.R.S. § 42-11001 (1999). The Supreme Court in Business Realty defined fair market value as, "that `amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.'" Business Realty, 181 Ariz. at 553, 892 P.2d 1340 at 1342. Arizona courts similarly recognize it is appropriate to use the three standard appraisal methods in determining fair market value of real property. Id. at 553-54, 892 P.2d at 1342-43. ("For tax purposes, fair market value is determined by use of three common appraisal approaches: capitalizing the income stream, estimating replacement cost less depreciation, and estimating market value by comparable sales.")
The Court further finds the restrictions imposed under the LIHTC program have a direct and immediate affect upon marketability and must be taken into account. Substantial rent restrictions have been placed on the property for a minimum term of fifteen years. Logic and common sense dictate that long term rental restrictions imposed upon rental property either by contract or state or federal regulation, have a significant impact on the value of the property. A willing buyer, knowing that there is a restriction as to the amount of rent that can be charged, would pay less for a low income housing project than for a regular commercial apartment complex. This property should not be valued as though a buyer would not consider the restrictions. A valuation for an LIHTC project, determined under any of the standard appraisal methods, that does not take the deed restrictions into account will not result in a determination of fair market value for that property.
In summary, the subject property's value should be determined from its restricted income potential without regard to the LIHTCs which create a disincentive for a current owner to sell, and little if any incentive for a new buyer to buy. While LIHTCs provide an incentive for an investor or developer to invest in and construct low income housing projects, they add little if anything to the long term value of the real property.

ORDER
NOW, THEREFORE,
IT IS ORDERED granting Cottonwood's Motion for Summary Judgment.
IT IS FURTHER ORDERED designating this opinion for publication.