The Honorable Stephen D. Bright State Representative 127 Southshore Drive Maumelle, Arkansas 72113-5810
Dear Representative Bright:
I am writing in response to your request for an opinion on the proper valuation of certain low-income housing for property tax purposes. You have enclosed with your request several pages of unsigned correspondence setting out the issue for resolution. The problem is stated as follows:
 Certain Multi-Family Residential Complexes in Pulaski County are being developed using IRS Tax Credits. These tax credits are typically awarded on the basis of a percentage of the construction costs of the project. In exchange for these tax credits, the property owners agree to accept a reduced rental rate for a specified number of the units for a period of time, usually fifteen (15) years, leasing those units to low-income families. These tax credits are negotiable in the market place and are often used as a method of offsetting the monthly rental reduction or the cash value is applied to the construction costs.
 The Pulaski County Assessor, among other assessors in the state, has traditionally appraised properties which have these tax credits at market value, using market rental rates, expenses and capitalization rates. This is the appropriate method of estimating market value utilized by all member organizations of the Appraisal Foundation. The use of contract rental rates and actual expenses would result in an estimate of the "Leased Fee Value" of the property, rather than the "Market Value."
 The owner of the Chapel Ridge Apartment Complexes across the county has recently challenged this method, stating in part, that the Assessor should be using contract rental rates rather than market rental rates, and should ignore the tax credits altogether. It is their opinion that the tax credits have no effect on market value.
 The Assessor's Office and most of the reputable Arkansas Certified General Appraisers we have contacted, hold a different belief. The consensus seems to be that the tax credits are de facto compensation for the reduced rental rates and therefore should either be included as income, prorated for the term of the rent restrictions, or the properties should be appraised using market rental and expense rates with no regard to the reduced rates required to qualify for the tax credits. In all instances where the owners of these properties have had appraisals made for financing, the market rental rates and expenses are used, resulting in an estimate of "Market Value."
REQUEST FOR RESOLUTION
 The Pulaski County Assessor's Office would like to have some resolution to this question. Should we use market abstracted rental rates, expenses and capitalization rates to estimate" Market Value" or should we use contract rental rates, actual expenses and built-up capitalization rates and estimate "Leased Fee Values?
RESPONSE
In my opinion the answer to this question is not clearly settled in Arkansas law. There is no applicable statute or regulation on the point and I have found no Arkansas case law addressing the issue. There are a number of decisions of other states on the question and they are split as to the outcome, some holding that the lower contract rents should be used without regard to the tax credits, some holding that the lower contract rates should be used along with consideration of the income tax credits and at least one holding that market rents should be used. I cannot predict with reasonable certainty the outcome of the issue if properly placed before the Arkansas Supreme Court. Recent litigation on the question in Pulaski County was settled before a judicial determination.[1] In my opinion legislative or judicial clarification of the issue is necessary to determine the matter.
 Arkansas Law on Property Tax Assessment
The Arkansas Constitution states that "All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State." Arkansas Constitution, art. 16, § 5. The Arkansas Supreme Court has held that "value" means "current market value." Arkansas Public Service Commissionv. Pulaski County Board of Equalization, 266 Ark. 64, 582 S.W.2d 942
(1979).
It has been stated that the last-cited case:
 . . . reviewed the Arkansas case law and statutory authority which established the premise by which assessment statutes and methods must be measured. This premise is that property must be assessed according to its "real and true value"; the "true and full market or actual value". In calculating the market value, many factors must be considered, and the type of inquiry will depend on what type of property is involved, but "all of these questions are to be considered for the purpose at last of ascertaining the market value of the tract in question, and that is the value which must be adopted for the purposes of assessment when it has been ascertained." Id., at 76, quoting American Bauxite Co. v. Board of Equalization of Saline County, 119 Ark. 362, 177 S.W. 1151 (1915).
Jim Paws, Inc. v. Equalization Board of Garland County, 289 Ark. 113,117, 710 S.W.2d 197 (1986).
Section 26-26-1202(a)(1) of the Arkansas Code echoes this requirement by stating that: "Each separate parcel of real property shall be valued at its true market value in money, excluding the value of crops growing thereon." "Real property and lands" is defined at A.C.A. § 26-1-101(1) as meaning "not only the land itself, whether laid out in town lots or otherwise, with all things therein contained, but also all buildings, structures, improvements, and other fixtures or whatever kind thereon and all rights and privileges belonging or in anywise appertaining thereto."
Assessors use different approaches (and often more than one approach), to arrive at the current market value of property. See Board of Equalizationv. Evelyn Hills Shopping Center, 251 Ark. 1055, 476 S.W.2d 211 (1972). No one particular method is mandated by the General Assembly.[2] It was stated in Evelyn Hills that: "Competent experts in the real estate field use three methods to arrive at true or market value — i.e., (1) comparable sales, (2) capitalization of income and (3) cost less depreciation." Id. at 1057.
As stated in Jim Paws Inc., supra "[i]n addition to the "new cost" approach used by the county appraiser, there are the market data approach and income approach. The market approach compares sales of similar properties in the community and looks at any arms-length transactions involving the subject property. The income approach estimates the fair market rental of the property, determines what the net income for the property would be, and then capitalizes the net income to obtain the dollar value of the property."[3] Id. at 118.
It has been stated that "[i]n the use of any one of the three methods there are certain inherent weaknesses" (Evelyn Hills at 1057), and that: "[w]e have recognized in cases involving condemnation of property by the State Highway Commission that use of reproduction costs, less depreciation, as a means of determining the true market value of property is a method that is inherently unreliable, especially when dealing with income-producing property." Jim Paws, Inc., supra at 120.
The correspondence you have attached appears to focus on the income method for determining the value of low-income housing. This determination appears to be supported by the weight of authority for this type of property.[4] See Jim Paws, Inc., supra; Spring Hill, L.P. etal. v. Tennessee State Board of Equalization, 2003 WL 23099679,2003 Tenn. App. Lexis 952 (Tn. Ct. App. 2003); Cottonwood Affordable Housingv. Yavapai County, 205 Ariz. 427, 72 P.3d 357 (2003) and RainbowApartments v. Illinois Property Tax Appeal Board, 326 Ill. App.3d 1105,762 N.E.2d 534, 260 Ill. Dec. 875 (2001). See also Penna, Fairness inValuation of Low-Income Housing Tax Credit Properties: An Argument forTax Exemption, 11 Fall. J. Affordable Housing Community Dev. L. 53, 59, (stating "[t]here is much support for using the income capitalization method to value LIHTC properties"). Again, however, the goal is to arrive at the true current fair market value of the property under Arkansas Constitution, article 16, § 5, in the manner as the General Assembly shall direct. Arkansas Public Service Commission v. Pulaski County Boardof Equalization, supra.
Another provision of the Arkansas Constitution, however, may also be relevant for purposes of this opinion. Amendment 57 authorizes the General Assembly to classify "intangible personal property" for assessment at lower percentages of value than other property and to exempt one or more classes of intangible personal property from taxation or to provide for taxation of intangible personal property on a basis other than ad valorem. In response to this authority, the General Assembly has adopted A.C.A. § 26-26-302 (Repl. 1997), which provides in subsection (a) that "[a]ll intangible personal property in this state shall be exempt from all ad valorem tax levies of counties, cities, and school districts in the state." The term "intangible personal property" is not defined in the Arkansas Constitution or in A.C.A. § 26-26-302. As will be discussed later in this opinion, it has been successfully argued in some jurisdictions that the federal low-income tax credits about which you inquire constitute "intangible personal property" and thus cannot be included or considered in the valuation of the low-income housing. Other jurisdictions disagree.
Finally, the standard of review for property tax assessment issues has been described as follows:
 The standard of review of a tax assessment is whether the assessment is "manifestly excessive or clearly erroneous or confiscatory." Summers Chevrolet, Inc. v. Yell County, 310 Ark. 1, 832 S.W.2d 486 (1992); Jim Paws, Inc. v. Equalization Bd. of Garland County, 289 Ark. 113, 710 S.W.2d 197 (1986), citing St. Louis-San Francisco Ry. Co. v. Arkansas Pub. Serv. Comm'n, 227 Ark. 1066, 304 S.W.2d 297 (1957). The burden of proof is on the protestant assessed. Summers Chevrolet, Inc. v. Yell County, supra; Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n, 307 Ark. 171, 818 S.W.2d 935 (1991).
 It is only in the most exceptional cases that an appellate court will grant a reassessment. Jim Paws, Inc. v. Equalization Bd. of Garland County, supra.
IBM Credit Corporation v. Pulaski County, 316 Ark. 580, 583,873 S.W.2d 161 (1994).
 The Federal "LIHTC" Program
The federal program to which your request refers has been summarized as follows:
 The Low Income Housing Tax Credit was created by the Tax Reform Act of 1986. It was codified at 26 I.R.C. § 42 [26 U.S.C. § 42]. Congress created the LIHTC to encourage new construction and rehabilitation of existing rental housing for low-income households and to increase the amount of affordable housing for low-income households. The LIHTC program authorizes the states to issue federal tax credits for the acquisition, rehabilitation, or new construction of affordable rental housing. To qualify for the LIHTCs, a project must have a portion of its units set aside for low-income households. The project's use of the property is restricted by deed to low income housing for at least fifteen years. The rents on the units are limited to a percentage of qualifying income. After the state allocates tax credits to the developers of the low-income housing project the credits are usually sold to private investors in a limited partnership. The private investors use the tax credits to offset their tax liability. The money paid for the credits is used as equity financing to make up the difference between the development cost for a project and the non-tax credit financing that could be expected to be repaid from rental income. Investors can claim the credits for each year of a ten year credit period as long as a minimum percentage of the projects' units are rented to low-income tenants at restricted rents for the fifteen year compliance period.
Cottonwood Affordable Housing v. Yavapai County, 205 Ariz. 427, 428-429,72 P.3d 357 (2003).
It has also been stated that such tax credits "run with the land, and extend to the owners' successors and assigns" and that the "Tax Credits may be sold together with the property to a purchaser who is willing to honor the restrictions on use." Spring Hill, L.P. et al v. TennesseeState Board of Equalization, 2003 WL 23099679, 2003 Tenn. App. Lexis 952 (Tn. Ct. App. 2003). "However, if a subsequent purchase in year fourteen [for example] changed the use of the property, the tax credits would then be subject to recapture plus penalties even though the beneficiary of the credit no longer had any interest in the property." MaryvilleProperties, L.P. v. Nelson, 83 S.W.3d 608, 616, fn.5 (2002). When a sale occurs before the end of the 15-year compliance period, it is possible to avoid recapture if the seller posts a bond with the Secretary of the Treasury. See Bayridge Apartments Limited Partnership v. Department ofRevenue, 321 Or. 21, 892 P.2d 1002, 1004 (1995), citing26 U.S.C. § 42(j)(6) and Rev. Ruling 90-60, CB 2.
 DISCUSSION
Although the tax credits are created by federal law, state law governs the property tax assessment of the low-income properties in question and in the absence of any specific legislative directive, it has been left to local assessors and state assessment officials to determine the proper valuation method.
The question is whether the current market value of such low-income housing property under the income capitalization method must be determined by using market rents, without regard to the contractual restrictions placed on the rental rates, or whether the reduced contracted rental rates should be used. If the latter is required, a question also arises as to whether the value of the tax credits must be considered in arriving at the true market value.
When approaching the assessment of such property, local assessors must be guided by the Arkansas Constitution, state statutes, applicable Arkansas case law and any directives of the Assessment Coordination Division. As noted above, however, neither the Arkansas Constitution, state statutes, Arkansas case law nor any directive of the Assessment Coordination Department specifically addresses the assessment of low-income housing utilizing the federal tax credits under 26 U.S.C. § 42. At a minimum, we know that the property must be valued at its "current market value" its "true market value in money." A.C.A. § 26-26-1202(a)(1). In addition, the definition of "real property" is broad, including "all rights and privileges belonging or in anywise appertaining thereto." On the other hand, state law exempts "intangible personal property" from taxation. There is no statutory definition of this term, however, and no case law interpreting this portion of our Constitution.
A host of other jurisdictions have addressed the question you pose. The Arkansas Supreme Court has stated that it is appropriate to look to the decisions of sister states when presented with novel questions. Williamsv. State, 338 Ark. 97, 991 S.W.2d 565 (1999); Rockefeller v.Rockefeller, 335 Ark. 145, 980 S.W.2d 255 (1998); Stephens v. State,320 Ark. 426, 898 S.W.2d 435 (1995); W.M. Bashlin Co. v. Smith,277 Ark. 406, 643 S.W.2d 526 (1982); Williamson v. Williamson, 212 Ark. 12,204 S.W.2d 785 (1947); and Birchett v. Tuf-Nut Garment ManufacturingCompany, 205 Ark. 483, 169 S.W.2d 574 (1943). It must be noted, however, that: "[r]eview of other states' decisions for precedential value in this area is difficult because of varying constitutional and legislative differences." Maryville Properties, L.P. v. Nelson, 83 S.W.3d 608 (Mo. 2002).
The decisions from sister states are not in agreement. At least one court has concluded that the use of market rents is proper, reasoning that the voluntary agreement by a developer to be bound by the restricted rents is not a "government restriction" so as to require consideration of the lower rents. See In the Matter of Appeal Of The Greens of Pine Glen Ltd.Partnership, 356 N.C. 642, 576 S.E.2d 316 (2003) (stating that: "[u]nlike a governmental restriction such as zoning, section 42 restrictions do not diminish the property's value, but instead balance tax credits allowed to the developer against rent restrictions imposed on the developer" and "[b]ecause section 42 restrictions are freely entered contractual covenants, not governmental regulations, the Commission did not err in concluding that a taxpayer may not artificially alter the value of its property below fair market value").
Most decisions appear to agree, however, that the use of the restricted rents is proper in determining value under the income method. SpringHill, L.P., et al v. Tennessee Board of Equalization, supra; CottonwoodAffordable Housing v. Yavapai County, supra; Maryville Properties, L.P.v. Nelson, 83 S.W.3d 608 (Mo. 2002); Pine Point Housing L.P. v. LowndesCounty Board of Tax Assessors, 254 Ga.App. 197, 561 S.E.2d 860 (2002);Rainbow Apartments v. Illinois Property Tax Appeal Board, supra; CascadeCourt Limited Partnership v. Noble, 105 Wash. App. 563, 20 P.3d 997
(2001); In the Matter of Ottawa Housing Association, L.P.,27 Kan. App. 1008, 10 P.3d 777 (2000); Walworth Affordable Housing LLCv. Village of Walworth, 229 Wis.2d 797, 601 N.W.2d 325
(1999); Greenfield Village Apartments L.P. v. Ada County,130 Idaho 207, 938 P.2d 1245 (1997); andBayridge Associates Limited Partnership v. Department of Revenue,321 Or. 21, 892 P.2d 1002 (1995). These cases conclude that using restricted rents is necessary because such contractual factors: 1) affect the true value of the property; 2) have economic consequences; 3) reflect the "actual and functional" use of the property under state law; or 4) constitute a "government restriction" of the property under relevant statutes. See Spring Hill supra; Pine Point, supra; Cascade Court,supra; and Greenfield Village, supra. Other cases hold that the restricted rents should be taken into account because "a buyer would not pay any price that was based on rents the buyer could not charge."Cottonwood Affordable Housing, supra.
Although the majority of courts appear to base valuation of such low-income housing property on the reduced rentals, sharp disagreement exists as to whether to also include the value of the credits when determining the value. Cases from Arizona, Washington, Missouri and Oregon conclude that the credits should not be considered. See,Cottonwood Affordable Housing v. Yavapai County, 205 Ariz. 427,72 P.3d 357, (2003); Maryville Properties, L.P. v. Nelson; 83 S.W.3d 608
(Mo. 2002); Cascade Court Limited Partnership v. Noble, 105 Wash.App. 563,20 P.3d 997 (2001); and Bayridge Associates, Limited Partnership v.Department of Revenue, 321 Or. 21, 892 P.2d 1002 (1995). The first three of these decisions were based upon the fact that the credits represented "intangible personal property" and that any value the credits may have is to the owner and not the property. At least one of these courts placed emphasis on an advisory opinion from the Appraisal Institutes Uniform Standards of Professional Appraisal Practice ("USPAP"), stating as follows:
 This Court in determining how property should be appraised, would give strong deference to the Appraisal Institutes Uniform Standards of Professional Appraisal Practice ("USPAP") and the Advisory Opinion that govern the conduct of certified appraisers through out the United States, particularly where neither the legislature nor courts have created such guidelines or precedent. The Arizona Administrative Code requires that our Arizona appraisers comply with USPAP when performing appraisals. [citation omitted.][5] In Advisory Opinion 14, the Appraisal Standards Board recognized that "LIHTCs are an example of an incentive that results in intangible property rights. . . ."[6]
Cottonwood Affordable Housing v. Yavapai County, supra at 359.
In the Bayridge case, the fourth case listed above, a majority of the Oregon Supreme Court concluded that the most probable price to be received for the properties at issue would not include the tax credits, because the record shows that the credits would be recaptured if the property were not maintained as low-income housing." Id. at 32.
Other courts, including those in Tennessee, Georgia, Illinois and Pennsylvania have concluded that the value of the income tax credits must be considered in determining the value of the property. See Spring HillL.P. v. Tennessee Board of Equalization, 2003 WL 23099679,2003 Tenn. App. Lexis 952 (Tn. Ct. App 2003); Pine Point Housing L.P.v. Lowndes County Board of Tax Assessors, 254 Ga.App. 197,561 S.E.2d 860 (2002); Rainbow Apartments v. IllinoisProperty Tax Appeal Board, 326 Ill. App.3d 1105,762 N.E.2d 534, 260 Ill. Dec. 875 (2001); and Parkside TownhomesAssociation v. Board of Assessment Appeals of York County, 711 A.2d 607
(Commn. Ct. 1998).[7] Some conclude that the credits must be included under a broad statutory definition of "real property" and that all aspects of the arrangement should be considered. See Spring Hill, supra.
Others have held that if the reduced rents are considered the value of the credits must also be considered because otherwise an artificially depressed value would be reached. Pine Pointe, supra and RainbowApartments, supra. Others insist on considering the value of the credits because it is a part of the "economic reality" of the property. ParksideTownhomes Associates, supra.
Three of the last-mentioned cases (Spring Hill, Pine Pointe, and RainbowApartments), specifically disagreed that the tax credits constituted "intangible personal property." The court in Spring Hill stated that:
 . . . the Tax Credits are not being taxed as intangible property. While the credits may be characterized as intangibles that affect the value of the property, they are not severable from it. Ownership of the property and agreement to restrict its use are the criteria for award of the credits. Tennessee law allows and has long allowed inclusion of value-affecting intangible factors in the valuation of property. Such inclusion does not constitute a tax on those intangibles.
Id. at 47.
The court also held that the credits were "irrevocably attached to the real property." Id. at 48. This conclusion is similar to the one reached in Rainbow Apartments, supra that: "[t]he benefit of a tax credit to a limited partner is entirely incidental to that investment." Id. at 1108.
As can be seen from the discussion above, courts are sharply divided on whether to include the value of the § 42 tax credits when determining the value of low-income housing. I have not found any controlling distinctions in Arkansas that would align our law more nearly with one group of cases or the other. As a consequence, it is impossible to predict with reasonable certainty what the Arkansas Supreme Court would hold if faced with the question. I will note that legislation has been passed in several states to specifically address the issue. See e.g., PinePoint Housing, supra (mentioning a Georgia statute, O.C.G.A. § 48-5-2, but concluding it does not have retroactive effect); and RainbowApartments, supra (mentioning an Illinois statute, Public Act 91-502, § 5, 1999 Ill. Laws 5782, amending Section 1-130, but concluding that it did not have retroactive effect). Absent judicial or legislative clarification, the answer to the question is unclear.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] See Little Rock Housing Associates v. Ward, Pulaski CountyAssessor, No. CV-03-426 (Pulaski County Circuit Court, 6th Div.), dismissed February 6, 2004.
[2] Although the Assessment Coordination Division has broad authority over the valuation of property for ad valorem tax purposes (see A.C.A. §§26-24-101 to -107 (Repl. 1997) and (Supp. 2003)) and has certain manuals, standards and procedures for the valuation of property, the guidelines are not mandatory and do not dictate any particular valuation method for the property in question. See Board of Equalization v. EvelynHills, supra at 1057, citing Kitchens v. Arkansas Appraisal Service,233 Ark. 384, 344 S.W.2d 853 (1961).
[3] To "capitalize" is to "compute the present value of (an income extended over a period of time)." Webster's Seventh New CollegiateDictionary (1972) at 124.
[4] I should also note a statute specifically addressing federally funded housing for the elderly or handicapped. Section 26-26-1206 of the Arkansas Code provides in subsection (a) that: "[h]ousing owned and operated by a nonprofit corporation or association for occupancy or use by elderly or handicapped persons, the construction of which is financed by the United States of America, shall be valued, for purposes of assessment, on the basis of the equity owned in the housing by the nonprofit corporation or association." This statute does not appear to apply to the type of property at issue in your question.
[5] Compare in Arkansas. A.C.A. § 17-14-305 (Repl. 2001).
[6] The full sentence of this quotation from Advisory Opinion AO-14 reads as follows: "Low-Income Housing Tax Credits (LIHTCs) are an example of an incentive that results in intangible property rights that are not real property but might be included in the appraisal." The opinion also notes that: "Standards Rule 1-2(e) allows the inclusion of intangible assets that are not real property in the appraisal. If they are significant to the overall value, the value of the intangibles should be developed and reported separately, as required by Standards Rule 1-4(g)" and that "A critical factor in all subsidized housing appraisals is the analysis of whether or not the various subsidies, incentives, and restrictions remain with the real property following a sale or foreclosure and thus are marketable property rights to be included in the appraisal."
[7] An unpublished decision from Connecticut is also to this effect.See Deerfield 95 Investor Associates, LLC, v. Town of East Lyme,1999 WL 391099 (Conn. 1999). See also, Greenfield Village Apartments L.P.v. Ada County, 130 Idaho 207, 938 P.2d 1245 (1997) (remanding for a determination of whether the credits should be included in the valuation, with one concurring judge stating that "it is essential to take into consideration the tax credits . . . in order to establish the fair market value of the units in question. To claim that the `actual and functional use' of the property is that of `rent-restricted low income housing' and not address the tax credits in determining its fair market value is untenable." Id. at 1249 (McDevitt, J. concurring).