NO. 4-00-0703

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

RAINBOW APARTMENTS,

Petitioner-Appellant,

v.

THE ILLINOIS PROPERTY TAX APPEAL BOARD; THE CHAMPAIGN COUNTY BOARD OF REVIEW; and CUNNINGHAM TOWNSHIP,

Respondents-Appellees.

)

)

)

)

)

))

Administrative Review

of the Illinois

Property Tax 

Appeal Board

No. 97-189-C-3

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Rainbow Apartments (Rainbow) seeks administrative review of the decision of the Illinois Property Tax Appeal Board (PTAB) to include the present value of federal low-income housing credits as part of its assessed real-property value.  We affirm.

I. BACKGROUND

Rainbow is a limited partnership owning a 72-unit rental property built in 1995.  The property was designed as low-income housing to qualify for tax credits pursuant to section 42 of the Internal Revenue Code (26 U.S.C. §42 (1994)).
  The developer syndicated the project and allocated 
the available tax credits to the limited partners, who could use them to reduce their tax liabilities annually from 1996 to 2005.

The project must comply with tenant-eligibility, rent, and other restrictions to avoid credit recapture.  Michael Amundson, Rainbow's appraiser, noted these requirements reduce demand for section 42 housing and lower rents below market rates for unencumbered properties.  He believed the highest and best use of the property as improved was rental as section 42 housing.  Amundson recommended valuing the property using the income-capitalization approach, which divided net annual operating income by a 10% rate of return.  He determined the real property to be worth $1,372,000 as section 42 housing and $2,052,000 if unencumbered by section 42 restrictions.  He calculated the present value of the tax credits as $1,460,000.

PTAB found the January 1, 1997, value of the property to be $2,832,000, which is the sum of Amundson's appraised values of the tax credits
 and the real property as section 42 housing.  Rainbow sought direct appellate review in this court.

II. ANALYSIS

Before turning to the merits of this appeal, we note our court has jurisdiction over this matter pursuant to section 16-195 of the Property Tax Code (Code) (35 ILCS 200/16-195 (West 2000)) and Supreme Court Rule 335 (155 Ill. 2d R. 335), which provide for direct appellate review of final administrative decisions of PTAB in cases where a change in assessed valuation of $300,000 or more is sought.

In this case, the issue is whether PTAB erred as a matter of law by including the value of tax credits in determining the property's fair cash value.  The facts are undisputed.  
An administrative agency's findings on questions of law are not binding on the courts and are reviewed by this court 
de
 
novo
.  
Kankakee County Board of Review v. Property Tax Appeal Board
, 305 Ill. App. 3d 799, 802, 715 N.E.2d 274, 276 (1999).

The standard for determining the fair cash value of property is the price at which ready, willing, and able buyers and sellers would agree.  
Kankakee County Board of Review v. Property Tax Appeal Board
, 131 Ill. 2d 1, 16, 544 N.E.2d 762, 768 (1989). 
 A property's income-earning capacity is the most significant element in arriving at its fair cash value for assessment purposes.
  
Kankakee County
, 131 Ill. 2d at 15, 544 N.E.2d at 768
.  In 
Kankakee County
, the supreme court held a
 subsidy agreement affecting a property's income-earning capacity must be considered in calculating fair market value if the property is designed for use as subsidized housing
, its best and highest use is as subsidized housing
, and it is transferrable to others for use as subsidized housing.  
Kankakee County
, 131 Ill. 2d at 18-19, 544 N.E.2d at 770
.

Rainbow asserts it receives no subsidy and its property's income-earning capacity is limited to its rental income.  We disagree for two reasons.  First, Rainbow does not obtain its entire income from market-determined rents;
 it allocates to its partners the tax credits as an additional cash-flow stream derived from its ownership interest in the property.  Next, those
 tax credits are practically equivalent to a government subsidy.  They 
allow the partners to reduce their tax liabilities dollar-for-dollar.  In addition, the area's 
market rents did not justify developing the project without the tax-credit incentive.

Further, we note Rainbow's rents as low-income housing are below the area's market rents
.  
The property was designed as section 42 low-income housing, and its highest and best use is rental in compliance with section 42 restrictions.  Ignoring the effect of the tax credits would distort the earning capacity, and thus the fair cash value, of the property as low-income housing.  See 
Kankakee County
, 131 Ill. 2d at 17, 544 N.E.2d at 769 ("The taxing authority must weigh both the positive and the negative aspects of the subsidy agreement and adjust the actual income figure to accurately reflect the true earning capacity of the property in question"). 

We also note the property is transferable with the consent of the Illinois Housing Development Authority, and Rainbow may avoid liability for tax-credit recapture 
by posting satisfactory bond.  See 26 U.S.C. §42(j)(6) (1994).  A willing buyer would most certainly consider the availability of section 42 tax credits when determining the fair cash value of the property.

Rainbow contends the tax credits are not a part of the real estate because they are unrelated intangible assets and are sold prior to the property's development.  PTAB agrees the tax credits are intangible property but contends they should be considered in valuing the property as "rights and privileges belonging or pertaining" to the property as defined in section 1-130 
of the Code (35 ILCS 200/1-130 (West 1996)
).

We 
disagree with the characterization of the tax credits as intangible property sold and existing apart from the real estate.  Section 42 tax credits are not intangible property because they do not constitute a right to a payment of money, have no independent value, and are not freely transferable upon receipt.  
City of Chicago v. Michigan Beach Housing Cooperative
, 242 Ill. App. 3d 636, 648, 609 N.E.2d 877, 886 (1993).  A limited partnership does not "sell" the tax credits to investors; they remain in the limited partnership.  Limited partners buy securities giving them an interest in the limited partnership.  The benefit of a tax credit to a limited partner is entirely incidental to that investment.  
Michigan Beach Housing Cooperative
, 242 Ill. App. 3d at 647, 609 N.E.2d at 886.

Because the section 42 tax credits affect the income-earning capacity of Rainbow's property, PTAB appropriately considered their present value in determining
 the fair cash value of Rainbow's property.  On administrative review, this court may affirm an agency's decision on any basis appearing in the record.  
Midwest Central Educational Ass'n v. Illinois Educational Labor Relations Board
, 277 Ill. App. 3d 440, 448, 660 N.E.2d 151, 156 (1995).

Our conclusion is not altered by the amendment in Public Act 91-502 (Pub. Act 91-502, §
5, eff. August 13, 1999 (1999 Ill. Laws 5782, 5782)), which amended section 1-130 of the Code by appending, "Not included therein are low-income housing tax credits authorized by [s]ection 42 of the Internal Revenue Code, 26 U.S.C. 
42."
  
We follow the supreme court's recent decision in 
Commonwealth Edison Co. v. Will County Collector
, 196 Ill. 2d 27, 749 N.E.2d 964 (2001), and determine Public Act 91-502 does not apply to the instant case.

In 
Commonwealth Edison
, the supreme court adopted the following test.  If the legislature has clearly indicated what the temporal reach of an amended statute should be, that expression of legislative intent must be given effect absent a constitutional prohibition.  Without that indication, the court must determine whether applying the statute would have a retroactive impact, without which the amended statute may be applied.  If a retroactive impact exists, then the court must presume the legislature did not intend the amended statute to be so applied.  
Commonwealth Edison
, 196 Ill. 2d at 38, 749 N.E.2d at 971.  The supreme court explained when a statutory change has retroactive impact:  "'the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.'"  
Commonwealth Edison
, 196 Ill. 2d at 39, 749 N.E.2d at 971-72, quoting 
Landgraf v. USI Film Products
, 511 U.S. 244, 269-70, 128 L. Ed. 2d 229, 254-55, 114 S. Ct. 1483, 1499 (1994).

The statutory amendment to section 1-130 contains no indication of its intended temporal reach.  Public Act 91-502 (Pub. Act 91-502, §
99, eff. August 13, 1999 (1999 Ill. Laws at 5783))
 simply states, "This [a]ct takes effect upon becoming law."  Applying the amendment in this case would have retroactive impact because it would alter the substantive scope of property subject to taxation after the assessor determined the value of the property.  Therefore, we presume that the legislature did not intend to apply the amended definition to assessments made prior to the effective date of the statute.

Nothing in the legislative history indicates an intent to make Public Act 91-502
 retroactive.  Rainbow points out Representative Pugh's statement regarding a "technical [a]mend­ment" (91st Ill. Gen. Assem., House Proceedings, May 18, 1999, at 33).  However, that statement referred to Senate amendment No. 1 to House Bill 1987
, which substituted the words "except in those circumstances where another method is clearly more appropriate" for "where appropriate" in new section 10-235 of the Code.  
We reject Rainbow's suggestion Public Act 91-502
 was intended merely as a clarification of existing law.

 
 
 
 III. CONCLUSION

For the reasons stated, we affirm the decision of PTAB.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.