936 So.2d 694 (2006)
HOLLY RIDGE LIMITED PARTNERSHIP, Appellant,
v.
Larry PRITCHETT, as Putnam, etc., et al., Appellees.
No. 5D05-1697.
District Court of Appeal of Florida, Fifth District.
August 4, 2006.
Rehearing Denied September 1, 2006.
*695 M. Stephen Turner, P.A. and David K. Miller, P.A., of Broad & Cassel, Tallahassee, and John P. Harllee, III, of Harllee & Bald, Bradenton, Of Counsel, for Appellant.
Loren E. Levy, of The Levy Law Firm, Tallahassee, for Appellee Larry Pritchett.
Victoria L. Weber of Hopping, Green & Sams, P.A., Tallahassee, for Amicus Curiae, Coalition of Affordable Housing Providers, Inc.
Wellington H. Meffert II, General Counsel, Florida Housing Finance Corporation, Tallahassee, for Amicus Curiae Florida Housing Finance Corporation.
EVANDER, J.
The issue in this case is whether Putnam County's property appraiser complied with the requirements of sections 193.011 and 420.5099, Florida Statutes, in assessing the value of Holly Ridge L.P.'s (Holly Ridge) property for the years 2002 and 2003. The trial court ruled in favor of the property appraiser. However, we find the property appraiser failed to comply with the law in determining just valuation and therefore reverse the final judgment and remand for a new trial.
Holly Ridge owns 120 senior rental apartments and amenities built with tax credit financing under the Low Income Housing Tax Credit ("LIHTC") program administered by the Florida Housing Finance Corporation. The LIHTC program was created by Congress as part of the Tax Reform Act of 1986. Pub.L. No. 99-514, 100 Stat. 2085 (1986). The purpose of this program is to encourage the private sector to develop affordable rental housing. Each state receives an annual allotment of low income housing tax credits. Tax credits equate to a dollar-for-dollar reduction of the holder's federal tax liability, which can be taken for up to ten years if the project satisfies governmental requirements each year.
Florida Housing Finance Corporation is the statutorily-created agency responsible for the allocation and distribution of tax credits to Florida applicants. The tax credits are awarded to qualified applicants through a competitive process. The tax credits provide a financing mechanism for the developer to pay most of the project construction costs. Upon receiving the tax credits, the developer typically sells them to a banking institution that qualifies to use the credits and pays the developer approximately eighty cents for each dollar of tax credit purchased. The banking institution that purchases the tax credits *696 then becomes a limited partner in the entity owning the development and the developer becomes the general partner. Once construction is completed and the project is placed in service, the banking institution may use one-tenth of the tax credits each year for ten consecutive years. After ten years, the tax credits are exhausted.
The tax credit sales proceeds are used to minimize project debt and thereby enable the project to be economically feasible given the substantial and long-term restrictions placed on the developed property. These restrictions are set forth in a Land Use Restriction Agreement ("LURA"). The LURA is recorded in the public records to insure compliance. The developer must submit annual compliance reports and projects are audited every year to enforce compliance. Tax credits may be disallowed or recaptured if a project is out of compliance.
In the present case, the Florida Housing Finance Corporation allocated approximately $8 million in income tax credits to Holly Ridge's developer/general partner, Picerne Holly Ridge, LLC. The developer sold the tax credits for approximately $6.4 million to investor limited-partner entities affiliated with PNC Bank. The developer used the tax credit sales proceeds to pay most of the construction costs. Holly Ridge used a construction loan mortgage of $1.5 million to pay construction costs that were not paid by tax credit sales proceeds.
In exchange for tax credits, the developer/general partner placed the property under a LURA that substantially restricts its use for fifty (50) years. The developer is obligated to build and manage the project in accordance with the LURA restrictions and to deliver the tax credits upon the agreed schedule. Among the numerous restrictions set forth in the LURA (which runs with the land and inures to successors and assigns of the owner), is that fifteen percent of the units must be set aside for tenants whose income is at or below forty percent of Putnam County's median income, twenty-five percent of the units are to be set aside for tenants whose income is at or below fifty percent of the County's median income, and sixty percent of the units must be reserved for tenants whose income is at or below sixty percent of the County's median income. Such tenants may be charged not more than thirty percent of their maximum monthly income as gross rent for the apartments. Rent cannot be changed during a tenancy and rental rates cannot be increased even if expenses or taxes increase. The property can only be used for rental apartments. The size of units and rooms and the type of furnishings and facilities are specified in detail in the LURA. Tenant services and programs must be provided by the owner, including on-site health care, regular health screening, food and clothing assistance, and activities such as computer courses and credit counseling. The project manager must be approved by the Florida Housing Finance Corporation and can be removed at its direction. The property cannot be sold without written consent of the Florida Housing Finance Corporation.
Article VII, section 4 of the Florida Constitution provides:
By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation,....
Just valuation has been determined by the Florida Supreme Court to be synonymous with fair market value, to-wit, the amount a purchaser willing but not obliged to buy, would pay a seller who is willing but not obliged to sell. See Valencia Center, Inc. v. Bystrom, 543 So.2d 214, 216 (Fla.1989); Walter v. Schuler, 176 So.2d 81 (Fla.1965). *697 The framers of the Constitution delegated to the Legislature the responsibility for deciding the specifics of how "just valuation" would be secured. Sunset Harbour Condo. Ass'n v. Robbins, 914 So.2d 925, 932 (Fla.2005).
Section 193.011 sets forth various factors which a property appraiser is required to take into consideration in determining just valuation. Of particular significance in this case is subsection (2), which provides, in part, that a property appraiser shall consider the effect that any local or state land use regulation will have on the value of the assessed property. Section 420.5099 sets forth additional directives which the property appraiser is required to follow in determining just valuation for LIHTC apartments. In 2002, the applicable statute provided:
For purposes of implementing this program in Florida and in assessing the property for ad valorem taxation under s. 193.011, neither the tax credits, nor financing generated by tax credits, shall be considered as income to the property, and the rental income from rent restricted units in a low-income tax credit development shall be recognized by the property appraiser.
§ 420.5099(5), Fla. Stat. (2001). Section 420.5099 was amended, effective January 1, 2003. The amendment changed the language of subsection (5) and added a new subsection (6). These subsections provided:
(5) For purposes of implementing this program in Florida and in assessing the property for ad valorem taxation under s. 193.011, neither the tax credits, nor financing generated by tax credits, shall be considered as income to the property, and the actual rental income from rent restricted units in a low-income tax credit development shall be recognized by the property appraiser. In considering or using the market or cost approaches under s. 193.011, neither the costs paid for by tax credits nor the costs paid for by additional financing proceeds received because the property is in the program shall be included in evaluation.
(6) For the further purpose of implementing this program in Florida and in assessing the property for ad valorem taxation under s. 193.011, any extended low income housing agreement and all amendments and supplements thereto which are recorded and filed in the official public records of the county where the property is located shall be deemed a land use regulation during the term of any such agreement, amendment, or supplement.
We find the amendment was enacted to clarify (and emphasize) that the value of the tax credits was not to be utilized by property appraisers in determining just valuation for LIHTCs and that the LURA restrictions were to be considered land use regulations.
In this case, we find the property appraiser did not comply with the clear dictates of section 420.5099. There are three traditional methods utilized to appraise propertycost, income and market. Both the property appraiser and Holly Ridge's expert determined the income approach was the most appropriate method to use in valuing the Holly Ridge property.[1] In utilizing an income approach, an *698 appraiser must determine the net operating income and then divide such number by the capitalization rate. In determining the net operating income amount, the property appraiser seemingly complied with section 420.5099. He utilized the project's actual income, not market income. Furthermore, as required by the statute, he did not include tax credits, nor financing generated by tax credits, as income. However, in determining the capitalization rate, the property appraiser admitted he factored in the impact of the tax credits in deriving a capitalization rate. By his own admission, he did not use a market capitalization rate. This methodology, which was accepted by the trial court, was improper. As a result of the property appraiser's erroneous consideration of the tax credits, he derived an unreasonably low capitalization rate. The result of using an unreasonably low capitalization rate was that the appraised value was significantly higher than the fair market value.[2] To permit the property appraiser to use his derived capitalization rate would permit him to circumvent the requirements of section 420.5099 by indirectly considering the tax credits as income. A public official cannot do indirectly that which he is prohibited from doing directly. Green v. Galvin, 114 So.2d 187, 189 (Fla. 1st DCA 1959). Additionally, the methodology used by the property appraiser, if permitted, would frustrate the legislative intent to utilize tax credits in order to encourage development of low-income housing. § 420.5099(2), Fla. Stat.
The property appraiser implicitly suggests the effect of complying with a literal interpretation of section 420.5099 would result in an appraised value below "just valuation" in contravention of Article VII, section 4 of the Florida Constitution. We disagree. Statutes come before the court "clothed with a presumption of constitutionality." Sunset Harbour, 914 So.2d at 929. The Legislature is given the responsibility to determine the specifics of how just valuation is determined. Id. at 932. Section 420.5099 can be interpreted as a valid effort by the Legislature to recognize the impact on the fair market value of LIHTC properties by the substantial and long-term land use restrictions placed on this type of property. The fact that these restrictions were imposed as a result of Holly Ridge's agreement to participate in the LIHTC program does not alter, in any way, the clear mandate of the statute that these restrictions are to be considered land use regulations. Furthermore, the statute would appear to be an effort by the Legislature to define these tax credits as intangible personal property and thereby exempt from ad valorem taxation.[3] The Florida Constitution prohibits *699 local government entities from levying ad valorem taxes on intangible personal property. The power to tax intangible personal property is available only to the state. Havill v. Scripps Howard Cable Co., 742 So.2d 210, 212 (Fla.1998). See also Wilkinson v. St. Jude Harbors, Inc., 570 So.2d 1332 (Fla. 2d DCA 1990) (where transferable development rights were determined to be not appurtenant to real property, and therefore not subject to ad valorem taxation by local government entities).
We recognize, as the trial judge did, that normally a property appraiser's valuation is presumed correct. Mazourek v. Wal-Mart Stores, Inc., 831 So.2d 85, 89 (Fla.2002). However, such presumption is lost when the property appraiser misapplies the statutory criteria in determining just valuation. Havill, 742 So.2d at 212.
Accordingly, the final judgment is reversed and this cause is remanded for a new trial.
REVERSED and REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] The property appraiser and Holly Ridge's expert agreed that the market approach could not be utilized because there were no comparable sales of LIHTC projects in Florida. The property appraiser used a cost approach in 2002 to "confirm" the valuation he had reached under the income approach. However, in utilizing the cost approach, the property assessor acknowledged that he had chosen an arbitrary reduction number to take into account the effect of the rental income restrictions. This number did not take into account the economic obsolescence resulting from the other substantial and long-term restrictions set forth in the LURA. In any event, the property assessor admitted that he did not independently use the cost approach to determine assessed value. His cost approach served largely to reconcile value derived under his income approach. The property assessor did not utilize a cost approach for the 2003 yearfinding that such an approach would be inappropriate under section 420.5099, as amended, effective January 1, 2003.
[2] The property appraiser determined the fair market value of the Holly Ridge property to be $4,759,353.00 for 2002 and $4,798,388.00 for 2003.
[3] Courts in other states have found tax credits created by the LIHTC program to constitute intangible property. See Cascade Court Ltd. Partnership v. Noble, 105 Wash.App. 563, 20 P.3d 997 (2001); Maryville Properties, L.P. v. Nelson, 83 S.W.3d 608 (Mo.Ct.App.2002); Cottonwood Affordable Housing v. Yavapai County, 205 Ariz. 427, 72 P.3d 357 (2003). But see Rainbow Apartments v. Illinois Property Tax Appeal Board, 326 Ill.App.3d 1105, 260 Ill.Dec. 875, 762 N.E.2d 534 (2001).