**Shane HORAN, Kenai Peninsula Borough Assessor, Appellant,**

v.

**KENAI PENINSULA BOROUGH BOARD OF EQUALIZATION, and Pacific Park Limited Partnership, Co–Appellees.**

**Pacific Park Limited Partnership, Cross–Appellant,**

v.

**Shane Horan, Kenai Peninsula Borough Assessor, Cross–Appellee.**

Nos. S–13333, S–13493.

Supreme Court of Alaska.

March 11, 2011.

Scott Bloom, Soldotna, for Appellant/Cross Appellee.

D. Kevin Williams and William M. Bankston, Bankston Gronning O'Hara, P.C., Anchorage, for Co–Appellee/Cross–Appellant.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

A property owner and a borough property tax assessor each contend, for different reasons, that the superior court erred in affirming the borough board of equalization's final valuation for a low-income housing tax credit property. We affirm a portion of the superior court's legal rulings upholding the board's interpretation of the relevant appraisal statute and we affirm the superior court's legal ruling affirming the board's choice of appraisal methodology. But because we cannot discern (1) how the board treated relevant federal tax credits in its valuation of the property, (2) the comparable properties for the board's finding that the assessor's valuation was "grossly disproportionate as compared to similar properties," or (3) the basis for the 40% economic obsolescence factor by which the board reduced that valuation, we remand for clarification by the board.

## II. BACKGROUND

### A. LIHTC Program Properties

Congress created the low-income housing tax credit (LIHTC) program as part of the Tax Reform Act of 1986.[1] The program is intended "to encourage the private sector to develop affordable rental housing."[2] Each state receives and distributes an annual allotment of low-income housing tax credits based on the state's population.[3] A developer can apply for a ten-year allocation of federal income tax credits,[4] but must commit to rec-

---

1. Pub.L. No. 99–514, 100 Stat. 2085 (1986) (codified at 26 U.S.C. § 42).

2. *Holly Ridge Ltd. P'ship v. Pritchett*, 936 So.2d 694, 695 (Fla.Dist.App.2006); *accord Cottonwood Affordable Hous. v. Yavapai Cnty.*, 205 Ariz. 427, 72 P.3d 357, 358 (Ariz. T.C.2003) ("Congress created the LIHTC to encourage new construction and rehabilitation of existing rental housing for low-income households and to increase the amount of affordable rental housing for low-income households.").

3. 26 U.S.C. § 42(h)(3)(A), (C)(ii).

4. *Id.* § 42(a), (f)(1).

ord a restrictive covenant to rent to low-income households at restricted rental rates for not less than 30 years,[5] certify compliance annually,[6] and keep compliance records.[7] The tax credits depend on continuing compliance and may be recaptured.[8]

Typically a developer finances a LIHTC project by attracting limited liability partners to invest in return for use of the stream of tax credits.[9] Tax credits can also be transferred through sale of the property, provided the new owner continues to comply with the LIHTC program.[10]

## B. Other Jurisdictions' Property Tax Treatment Of LIHTC Properties

Rental restrictions and federal tax credits pose difficult questions in property tax assessments of LIHTC properties, and courts are not in agreement in resolving these questions.

Courts differ on whether and why rental restrictions must be considered. Arizona, Kansas, South Dakota, and Washington all assess property value based on standards similar to Alaska's statutory "full and true value" standard,[11] and their courts have held that rental restrictions on LIHTC properties must be considered.[12] The Supreme Courts of Idaho and Oregon, basing their decisions on statutes dissimilar to Alaska's,[13] likewise have held LIHTC rental restrictions must be considered.[14] The Ohio Supreme Court has held that LIHTC rental restrictions must be considered because they are "police power" restrictions enacted under the General Welfare Clause of the Federal Constitution.[15] Reaching the opposite conclusion, the North Carolina Supreme Court reasoned that because taxpayers choose to participate in the LIHTC program, the taxing authority does not need to consider the rental restrictions.[16]

**5.** *Id.* § 42(g)(1)–(2), (h)(6), (i)(1).

**6.** *Id.* § 42(*l*)(2); 26 C.F.R. § 1.42–5(c).

**7.** 26 U.S.C. § 42(*l*)(1); 26 C.F.R. § 1.42–5(b).

**8.** 26 U.S.C. § 42(a), (j).

**9.** *E.g., Holly Ridge Ltd. P'ship*, 936 So.2d at 695–96; Jeanne L. Peterson, *The Low–Income Housing Tax Credit*, 73 MICH. B.J. 1154, 1157 (1994) (explaining LIHTC property developers "generally use the vehicle of a limited partnership whereby limited partner investors . . . buy up [most] of [the] limited partner interests . . . in return for an allocation of [most] of the tax credit[s]" "because of limitations on the amount of credit that an individual can claim" and because some developers are nonprofits that "have no tax liability to offset").

**10.** 26 U.S.C. § 42(d)(7)(A).

**11.** AS 29.45.110(a) provides that property shall be assessed at its "full and true value," with some exceptions, and defines "full and true value" as "the estimated price that the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels."

**12.** *Cottonwood Affordable Hous.*, 72 P.3d at 360 (determining rental restrictions must be taken into account when assessing "full cash value or fair market value" in Arizona because they "have a significant impact on the value of the property"); *In re Equalization Appeal of Ottawa Hous. Assoc., L.P.*, 27 Kan.App.2d 1008, 10 P.3d 777,

778–80 (2000) (holding rental restrictions must be considered in appraising "fair market value" for tax purposes); *Town Square Ltd. P'ship v. Clay Cnty. Bd. of Equalization*, 704 N.W.2d 896, 900, 903 (S.D.2005) (holding rental restrictions must be considered in assessing "true and full value"); *Cascade Court Ltd. P'ship v. Noble*, 105 Wash.App. 563, 20 P.3d 997, 1000–02 (2001) (holding rental restrictions must be taken into account in assessing "true and fair value in money").

**13.** *Greenfield Vill. Apartments, L.P. v. Ada Cnty.*, 130 Idaho 207, 938 P.2d 1245, 1247–48 (1997) (discussing IDAHO CODE ANN. § 63–202 (repealed 1997), which provided that "actual and functional use shall be a major consideration" when assessing property value); *Bayridge Assocs. Ltd. P'ship v. Dep't of Revenue*, 321 Or. 21, 892 P.2d 1002, 1003, 1005 (1995) (discussing OR.REV.STAT. § 308.205(2) (1989), which requires that properties subject to "governmental restriction as to use" not be assessed by reference to sales of unrestricted properties unless compensating adjustments are made).

**14.** *Greenfield Vill. Apartments, L.P.*, 938 P.2d at 1248; *Bayridge Assocs. Ltd. P'ship*, 892 P.2d at 1005–07.

**15.** *Woda Ivy Glen Ltd. P'ship v. Fayette Cnty. Bd. of Revision*, 121 Ohio St.3d 175, 902 N.E.2d 984, 986, 989–91 (2009) (relying in part on U.S. CONST. art. I, § 8).

**16.** *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 576 S.E.2d 316, 321 (2003).

That court noted that the unfavorable rental restrictions are balanced by the favorable federal tax credits.[17]

Courts also differ on whether LIHTC tax credits should be considered. The Arizona Tax Court, Washington and Missouri intermediate courts of appeal, and Ohio and Oregon Supreme Courts have determined that regardless of whether rental restrictions are taken into account in property tax assessments, the tax credits should not be considered.[18] The Arizona court reasoned that the tax credits (1) are intangible property in that they are "paid by the federal government as an incentive to invest in the project and are not income flowing from the rental of the property" and (2) do "not significantly affect the marketability" of the property because a buyer of a limited partner's interest receives only the remainder of the credits, which are subject to recapture.[19] The Missouri, Ohio, and Washington courts focused on the tax credits' intangibility in concluding they must not be considered.[20] The Oregon court reasoned that the tax credits would not affect the most probable price for the property because "the credits would be recaptured if the property were not maintained as low-income housing."[21]

Reaching the opposite conclusion, courts in Georgia, Idaho, Illinois, Indiana, Michigan, Pennsylvania, South Dakota, and Tennessee have held that LIHTC tax credits cannot be ignored when rental restrictions are taken into account in the absence of contrary statutory authority.[22] The Georgia court rejected the argument that tax credits should be ignored as valueless because they are allocated to a limited partner and expire before the rental restriction period ends.[23] Illinois and Michigan courts rejected the argument that tax credits should be ignored as intangible.[24]

## C. Alaska Property Tax Framework For LIHTC Properties

Alaska Statute 29.45.110(a) requires that property be assessed at its "full and true value," defined there as "the estimated price that the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels."

In *Dash v. State*[25] we recognized appraisers' three usual approaches to valuing real property:

> They are the cost approach, the market data approach, and the income approach. The cost approach, which arrives at value by determining the current cost of reproducing a property less depreciation, is used only when the property is improved. The market data approach measures value by comparison to recent sales of similar property. The income approach, which is concerned with the present worth of future

17. *Id.* at 322.

18. *Woda Ivy Glen Ltd. P'ship*, 902 N.E.2d at 991 n. 2, 992 n. 4; *Cottonwood Affordable Hous.*, 72 P.3d at 359–60; *Maryville Props., L.P. v. Nelson*, 83 S.W.3d 608, 617 (Mo.App.2002); *Cascade Court Ltd. P'ship*, 20 P.3d at 1001–02; *Bayridge Assocs. Ltd. P'ship*, 892 P.2d at 1007.

19. *Cottonwood Affordable Hous.*, 72 P.3d at 359.

20. *Maryville Props., L.P.*, 83 S.W.3d at 612–17; *Woda Ivy Glen Ltd. P'ship*, 902 N.E.2d at 992 n. 4; *Cascade Court Ltd. P'ship*, 20 P.3d at 1002.

21. *Bayridge Assocs. Ltd. P'ship*, 892 P.2d at 1007.

22. *Pine Pointe Hous., L.P. v. Lowndes Cnty. Bd. of Tax Assessors*, 254 Ga.App. 197, 561 S.E.2d 860, 863, 865–66 (2002); *Brandon Bay, Ltd. P'ship v. Payette Cnty.*, 142 Idaho 681, 132 P.3d 438, 441 (2006); *Rainbow Apartments v. Ill. Prop. Tax Appeal Bd.*, 326 Ill.App.3d 1105, 260 Ill.Dec. 875, 762 N.E.2d 534, 536–37 (2001), *superseded by statute*, 35 ILL COMP. STAT. ANN. 200/1–130 (1999); *Pedcor Invs.–1990–XIII, L.P. v. State Bd. of Tax Comm'rs*, 715 N.E.2d 432, 437–38 (Ind. T.C. 1999); *Huron Ridge LP v. Ypsilanti Twp.*, 275 Mich.App. 23, 737 N.W.2d 187, 198 n. 5, 199 (2007); *Parkside Townhomes Assocs. v. Bd. of Assessment Appeals of York Cnty.*, 711 A.2d 607, 609–11 (Pa.Commw.1998); *Town Square Ltd. P'ship*, 704 N.W.2d at 903; *Spring Hill, L.P. v. Tenn. State Bd. of Equalization*, No. M2001–02683–COA–R3–CV, 2003 WL 23099679, at *2, *14 (Tenn.App. Dec.31, 2003).

23. *Pine Pointe Hous., L.P.*, 561 S.E.2d at 863–64.

24. *Rainbow Apartments*, 260 Ill.Dec. 875, 762 N.E.2d at 537; *Huron Ridge LP*, 737 N.W.2d at 195, 198–99.

25. 491 P.2d 1069 (Alaska 1971).

benefits from the property, arrives at present value by discounting or 'capitalizing' the future income which could be derived from the property. The income capitalization method involves three steps:

> (1) an estimate of the income which the property is capable of producing, including both periodic income and the income to be derived from future sale of the property; (2) an estimate of the rate of return (capitalization rate) an investor would require in order to induce him to make an investment with the risk and lack of liquidity of an equity interest in the particular property; (3) an application of this capitalization rate to the estimated income to derive the present value of the estimated income.[26]

In 2000 the Alaska legislature added a new subsection to AS 29.45.110.[27] The bill's initial draft mandated valuing all LIHTC properties based on rental restrictions without adjustment for tax credits.[28] The bill's proponents explained in committee that the bill was prompted by a change in the Municipality of Anchorage's interpretation of full and true value for LIHTC properties.[29] Although the Municipality had for years valued LIHTC properties based on rent-restricted income, it had stopped doing so, thereby imposing higher property tax burdens.[30] But legislative committees also heard concerns that the proposed bill would give LIHTC properties an unfair competitive advantage over other housing[31] and reduce tax revenue to municipalities.[32]

The final version of the bill created AS 29.45.110(d).[33] Subsection (d)(1) provides that when calculating the full and true value of a property qualifying for the LIHTC program before January 1, 2001, an assessor "shall base assessment ... on the actual income derived from the property and may not adjust it based on the amount of any federal income tax credit given for the property."[34] For properties qualifying for the LIHTC program on or after January 1, 2001, subsection (d)(2) directs local governments to determine by ordinance whether to follow subsection (d)(1) or to generally exempt these properties from subsection (d)(1)'s mandatory income approach and determine parcel-by-parcel whether to require use of that appraisal method.[35]

### D. Kenai Peninsula Borough LIHTC Properties Tax Framework

The Kenai Peninsula Borough Assembly (Assembly) passed an ordinance exempting post–2000 LIHTC properties from AS 29.45.110(d)(1)'s mandatory valuation based on actual income without consideration of tax credits.[36] The Assembly therefore decides on a parcel-by-parcel basis whether to direct the Kenai Peninsula Borough Assessor (Assessor) to use that valuation method.

### E. Pacific Park LIHTC Property And 2007 Assessment

Pacific Park Limited Partnership (Pacific Park) owns a 30–unit apartment complex (Apartments) in Seward, within the Kenai Peninsula Borough (Borough). In 2003 Alas-

---

**26.** *Id.* at 1071 (internal citations omitted).

**27.** Ch. 79, § 1, SLA 2000 (H.B. 272).

**28.** House Bill (H.B.) 272, 21st Leg., 2d Sess. (Jan. 10, 2000).

**29.** *Municipal Tax: Low Income Housing: Hearing on H.B. 272 Before the H. Comm. on Cmty. & Reg'l Affairs,* 21st Leg., 2d Sess. (Alaska Feb. 1, 2000) (statement of Jonathon Lack, Legislative Assistant to Rep. Andrew Halcro).

**30.** *Id.*

**31.** *Id.* (statements of Pat Carlson, Assessor, Kodiak Island Borough, and Wiley Brooks, Certified Prop. Manager and member of Alaska Chapter Real Estate Mgmt.).

**32.** *Hearing on H.B. 272 Before the S. Fin. Comm.,* 21st Leg., 2d Sess. (Alaska Apr. 13, 2000) (statement of Eric Dyrud, Real Estate Broker, member of Anchorage Bd. of Realtors Legislative Comm. and Alaska Bd. of Realtors Legislative Comm.).

**33.** *See* note 27, above.

**34.** AS 29.45.110(d)(1); *compare id. with* AS 29.45.110(d)(2).

**35.** AS 29.45.110(d)(2).

**36.** KENAI PENINSULA BOROUGH CODE (KPB) 05.12.085 (2003).

ka Housing Finance Corporation, the state agency tasked with allocating federal income tax credits to LIHTC program participants in Alaska, allocated to Pacific Park $383,833 of tax credits in anticipation that the Apartments would be LIHTC housing. Pacific Park used the tax credits to finance the Apartments' construction. After construction was completed in 2004, Pacific Park recorded a 30–year restrictive covenant under which the Apartments' units, with the exception of one unit reserved for a manager, could be rented only to low-income tenants and only at restricted rates.

In 2005 Pacific Park applied to the Assembly for a resolution directing the Assessor to value the Apartments based on actual income derived from the property. The resolution failed.

In 2005, 2006, and 2007 the Assessor valued the Apartments at $2,930,700 using the cost approach, which is based on the rationale that a willing buyer will not pay more for a building than it would cost to build one just like it.[37] The Assessor described the steps of the cost approach as: (1) calculating the current cost to reproduce or replace improvements such as buildings; (2) subtracting out physical, functional, or economic depreciation evident in the structures; and then (3) adding in the value of the land and entrepreneurial profit. The Assessor used the cost approach to value the nearly 90 apartment complexes in the Borough, including Pacific Park's Apartments. But three pre–2001 LIHTC projects were revalued under the income approach required by AS 29.45.110(d)(1), based on actual restricted rents and without consideration of federal income tax credits.

In 2007 Pacific Park had the Apartments independently appraised using the income approach and the restricted rents. As explained by the Assessor, the income approach measures property value by capitalizing income streams and potential future resale into a present, lump sum value.[38] The independent appraisers, Brian Z. Bethard and Michael A. Forsland, used this approach because "[t]he income approach best reflects the market value at restricted rents for the subject" and because Pacific Park had limited the appraisal to that approach. Bethard and Forsland projected the stabilized net operating income at the restricted rents, excluding property tax, as $62,089 annually and valued the Apartments at $652,000.

## F. Board Of Equalization Appeal

Pacific Park appealed the Assessor's 2007 valuation of $2,930,700 to the Borough's Board of Equalization (Board). Upon reinspection and reevaluation, the Assessor calculated a total value of $3,067,800.

The Board heard Pacific Park's appeal on June 11, 2007. Pacific Park argued that: (1) the Assessor had used "a fundamentally wrong principle of valuation in that the Assessor did not consider [the] 30–year rent restriction"; and (2) even under the cost approach, rental restrictions needed to be considered in the form of economic obsolescence.[39] Pacific Park also argued that its federal tax credits should not be considered in the assessment valuation because they are intangible.

The Assessor argued that: (1) Pacific Park would have to show fraud or the clear adoption of a fundamentally wrong valuation

**37.** Jonathan Penna, *Fairness in Valuation of Low–Income Housing Tax Credit Properties: An Argument for Tax Exemption*, 11 Fall J. Afforda- ble Housing & Community Dev. L. 53, 55 (2001); *accord Cascade Court Ltd. P'ship*, 20 P.3d at 999 n. 4 ("The cost approach estimates the cost of producing a new or substitute property and adjusts this estimated cost for differences in age, utility and condition between the subject property and a new property.").

**38.** *See Dash*, 491 P.2d at 1071 (describing income approach); *Cascade Court Ltd. P'ship*, 20 P.3d at 999 n. 6 ("The income approach analyzes a property's ability to generate income and rever-

sion and converts these benefits into an indication of present value."); Penna, *supra* note 37, at 58–59 (explaining income approach calculates property value by applying expected return on investment to property's net operating income, which is gross rents received minus operating expenses, adjusted for vacancies).

**39.** "Economic obsolescence" is "diminution in the value or usefulness of property" that "results from external factors, such as decreased demand or changed governmental regulations." Black's Law Dictionary 1107 (8th ed. 2004).

methodology for the Board to alter the valuation; (2) using the cost approach was within the Assessor's discretion as a taxing authority; and (3) the cost approach maintains a level playing field between Pacific Park and competing businesses not in the LIHTC program. The Assessor also argued that rental restrictions should not be allowed to affect the Apartments' value because participation in the LIHTC program should be seen either as a voluntary contractual agreement to restrict rents in exchange for tax credits or as an abnormally favorable below-market rental agreement between the owner and renters.

The Board found that although using the cost approach was within the Assessor's discretion, application of that approach to the Apartments without consideration of rental restrictions or economic obsolescence resulted in a valuation that was "overvalued [and] grossly disproportionate as compared to similar properties." The Board decided that the Apartments' improvement value should be reduced by a 40% economic obsolescence factor.

### G. Superior Court Appeal

The Assessor appealed the Board's decision to the superior court, and Pacific Park cross-appealed. The superior court addressed four issues encompassing all points on appeal. First, the superior court held the Board did not err by not adopting the income approach to value the Apartments. Second, it held the Board did not violate state law, borough code, or legislative intent by adjusting the Assessor's valuation. Third, it held the Board did not err by finding the Assessor's application of the cost approach resulted in an overvalued and grossly dispropor-

tionate valuation. Finally, it held the facts and law supported the Board's valuation of Pacific Park's property, including the 40% economic obsolescence factor.

The Assessor appeals and Pacific Park cross-appeals.

### III. STANDARD OF REVIEW

"When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the board's decision." [40] Questions of law and fact involving agency expertise are reviewed under the reasonable basis standard. [41]

Whether the Board's factual findings, particularly the findings that the Assessor's valuation was grossly disproportionate and excessive by 40%, are "sufficient to permit appellate review is a legal question that we decide by exercising our independent judgment." [42] In the absence of a specific standard provided by statute or ordinance, the test of the sufficiency of an agency's findings of fact is "a functional one: do the [agency's] findings facilitate this court's review, assist the parties and restrain the agency within proper bounds?" [43] This court may look to the record to clarify the agency decision-maker's reasoning and conclusion. [44]

Whether the Board's assessment violated relevant law is a question of law not involving agency expertise, and we therefore review this question under the substitution of judgment standard. [45] In doing so, "[w]e will 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' " [46]

**40.** *Alford v. State, Dep't of Admin., Div. of Ret. & Benefits,* 195 P.3d 118, 122 (Alaska 2008) (quoting *Alyeska Pipeline Serv. Co. v. DeShong,* 77 P.3d 1227, 1231 (Alaska 2003)).

**41.** *Black v. Municipality of Anchorage, Bd. of Equalization,* 187 P.3d 1096, 1099 (Alaska 2008).

**42.** *Alvarez v. Ketchikan Gateway Borough,* 28 P.3d 935, 938 (Alaska 2001) (citing *Ayele v. Unisea, Inc.,* 980 P.2d 955, 957 n. 2 (Alaska 1999)).

**43.** *Faulk v. Bd. of Equalization,* 934 P.2d 750, 751 (Alaska 1997) (quoting *S. Anchorage Con-*

*cerned Coal., Inc. v. Coffey,* 862 P.2d 168, 175 (Alaska 1993)).

**44.** *See id.* (citing *S. Anchorage Concerned Coal., Inc.,* 862 P.2d at 175 and *Mobil Oil Corp. v. Local Boundary Comm'n,* 518 P.2d 92, 97 (Alaska 1974)).

**45.** *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

**46.** *Williams v. Abood,* 53 P.3d 134, 139 (Alaska 2002) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

## IV. DISCUSSION

### A. Appraisal Methodology And Interpretation Of AS 29.45.110

#### 1. Methodology

■ Pacific Park appeals on the ground that the Board "erred when it failed to adopt [Pacific Park's] appraiser's valuation using the 'income' approach" because that approach is the preferred method for valuing LIHTC projects.

The Apartments are properly valued under AS 29.45.110 subsection (a)'s general full and true value provision rather than subsection (d)(1)'s mandatory income approach without adjustment for tax credits because they did not qualify for the LIHTC program prior to January 1, 2001, they are located in a municipality where post–2000 LIHTC projects are exempt from mandatory use of the statutory income approach,[47] and Pacific Park's application for an Assembly resolution directing the Assessor to use the statutory income approach failed.

■ A taxing authority is allowed to choose a reasonable method for determining the full and true value of a property "so long as there was no fraud or clear adoption of a fundamentally wrong principle of valuation."[48] Provided that a method is not fundamentally wrong, it does not even need to be recognized by the appraisal community.[49] Here, Pacific Park's witness Bethard testified that the cost approach is "a fundamentally correct approach to use, it's normal appraisal methodology," and we have long recognized the cost approach as a usual appraisal method for improved property.[50] Accordingly, the Board could reasonably conclude "the cost approach is an acceptable method of valuation." We therefore affirm the superior court's decision upholding the

Board's use of the cost approach to value the Apartments.

#### 2. Consideration of restricted income and tax credits

■ The Assessor appeals on the ground that the Board "impermissibly focused on the restricted rental income of the property." The Assessor argues that (1) after AS 29.45.110(d) became effective, rental restrictions could not be considered in calculating full and true value under AS 29.45.110(a), and (2) the failure of Pacific Park's Assembly resolution precludes consideration of the rental restrictions. We disagree. Just because a taxing authority is not required under state or local law to use the statutory income approach does not necessarily mean that it is prohibited from considering restricted rental rates in another valuation method, if reasonable to do so. The Board could reasonably conclude that it was appropriate to consider the rental restrictions when valuing the Apartments under the cost approach, and we affirm the superior court's decision upholding the Board on this issue.

■ The Assessor also appeals on the ground that the Board's valuation "failed to account for the federal tax credits provided to the Property." The Assessor argues there is a requirement that the taxing authority consider federal income tax credits if it considers rental restrictions in assessing the full and true value of a LIHTC property. As noted above, courts from other jurisdictions differ on whether federal income tax credits must be considered when rental restrictions are considered in valuing a LIHTC property. Some conclude that tax credits should be ignored because they are intangible property[51] or because they are subject to recapture if the rental restrictions are violated.[52] Others conclude that tax credits should be considered because they relate directly to the

---

**47.** KPB 5.12.085.

**48.** *Fairbanks N. Star Borough Assessor's Office v. Golden Heart Utils., Inc.*, 13 P.3d 263, 267 (Alaska 2000) (quoting *Hoblit v. Greater Anchorage Area Borough*, 473 P.2d 630, 632 (Alaska 1970)).

**49.** *Id.* at 268.

**50.** *Dash*, 491 P.2d at 1071.

**51.** *Cottonwood Affordable Hous.*, 72 P.3d at 359; *Maryville Props., L.P.*, 83 S.W.3d at 617; *Woda Ivy Glen Ltd. P'ship*, 902 N.E.2d at 992 n. 4; *Cascade Court Ltd. P'ship*, 20 P.3d at 1002.

**52.** *Cottonwood Affordable Hous.*, 72 P.3d at 359; *Bayridge Assocs. Ltd. P'ship*, 892 P.2d at 1007.

real property.[53]

Here the Board did not expressly address the tax credits associated with the Apartments, and we cannot discern whether or why the Board took the tax credits into account or ignored them in its adjustment of the Assessor's valuation. The superior court noted that the Board's decision did not address these questions, but nonetheless held that the Board "acted within its expertise to decide that tax credits are largely intangible and not appropriate for tax assessment." We are unable to affirm the superior court's decision on this record. As discussed below, we are remanding to the Board for clarification of its use of the rental restrictions to adjust the Assessor's valuation, and the Board should clarify its treatment of the tax credits in its subsequent decision as well.

## B. The Board's Findings Regarding Disproportionate Valuation And Obsolescence

The Assessor and Pacific Park both contend the Board's valuation of the Apartments must be set aside. The Assessor argues the Board did not accord his valuation proper deference and lacked sufficient grounds to find his valuation "excessive or grossly disproportionate compared to other similar projects." Pacific Park argues the Board should have recognized "complete" economic obsolescence due to the rental restrictions and, even under the cost approach, should have reached the same valuation as Pacific Park's appraiser under the income approach.

"The only grounds for adjustment of assessment are proof of unequal, excessive, improper, or under valuation based on facts that are stated in a valid written appeal or proven at the appeal hearing." [54] In reviewing the Board's findings, we understand the word "overvalued" to be synonymous with

"excessive" and the phrase "grossly disproportionate as compared to similar properties" to be synonymous with "unequal." Our "threshold question ... is whether the record sufficiently reflects the basis for the [Board's] decision so as to enable meaningful judicial review." [55]

### 1. "Overvalued" finding

■ The Board found the failure to factor in rental restrictions and economic obsolescence made the Assessor's valuation excessive. The Assessor argues that his failure to incorporate rental restrictions in the form of economic obsolescence did not render the valuation excessive because economic obsolescence cannot measure internal conditions such as rental rates. But although the deed restriction limiting a LIHTC property's rental rates is part of the property itself, the marketplace's reaction to the deed restriction is external.[56] In this way, economic obsolescence can measure the external reaction to the deed restriction on the Apartments.[57] The Board could reasonably determine the Assessor's valuation was excessive because it failed to account for economic obsolescence, and to this extent we affirm the superior court's decision upholding the Board on this issue.

■ Pacific Park argues the Board should have recognized "complete" economic obsolescence instead of a 40% factor. In applying the 40% factor, the Board acknowledged it heard testimony that "up to a 50% reduction" would be reasonable as an economic obsolescence factor. Pacific Park accurately clarifies that Bethard's testimony suggested a 50% factor at the hearing to account for the depressed nature of the general housing market in Seward, and implies that its 30–year rental restrictions would

**53.** *Brandon Bay, Ltd. P'ship*, 132 P.3d at 441; *Huron Ridge LP*, 737 N.W.2d at 198–99.

**54.** AS 29.45.210(b).

**55.** *Faulk*, 934 P.2d at 751 (quoting *Fields v. Kodiak City Council*, 628 P.2d 927, 932 (Alaska 1981)).

**56.** *Pedcor Invs.–1990–XIII, L.P.*, 715 N.E.2d at 437.

**57.** *See Cascade Court Ltd. P'ship,* 20 P.3d at 1002 n. 32 (stating "deed restrictions affect the income-producing ability of the projects and thus affect their value" and an "[a]ssessor may conclude that the deed restrictions cause the projects to suffer economic obsolescence" (citing *Pedcor Invs.–1990–XIII, L.P.*, 715 N.E.2d at 437)).

make the Apartments even less desirable to a potential buyer. Pacific Park never quantified the additional economic obsolescence due to rental restrictions except to assert that an appropriate economic obsolescence factor would render a cost-approach valuation similar to an income-approach valuation.

The Board's oral findings do not specify whether its 40% economic obsolescence factor accounts for the general housing market in Seward, the rental restrictions, or both, stating simply "the cost approach should include a factor for economic obsolescence." The Board's written findings state the Apartments were overvalued because "[t]he assessment did not include a factor for economic obsolescence, even though the property is burdened by rent restrictions that run with the land," indicating the 40% factor relates at least in part to the rental restrictions.

At oral argument before us, counsel for Pacific Park stated that the 40% factor chosen by the Board lacked an evidentiary basis. The Assessor stated at oral argument that he understood the restricted rental income was the sole reason for the Board's 40% obsolescence factor and the general Seward market was not taken into account by the Board. It is not clear to us why the Board applied a 40% economic obsolescence factor when the only quantified factor presented to the Board was the 50% obsolescence factor accounting for the depressed Seward rental market in general. We therefore remand to the Board for clarification and explanation of its decision on this issue and for further factual findings as it deems necessary.[58]

### 2. "Grossly disproportionate" finding

■ The Board's oral and written findings do not state the comparison from which it determined the Assessor's valuation to be unequal.

Pacific Park argued to the Board that the Assessor's valuation was unequal to valuations of other LIHTC properties in Alaska. But as the Assessor pointed out to the Board, the other LIHTC properties in Alaska are valued under AS 29.45.110(d)—which mandates they be assessed under the income approach based on actual income without adjustment for federal tax credits—because they either qualified as LIHTC properties before January 1, 2001, or are located in municipalities without an ordinance allowing for a different valuation method.[59]

The Assessor made particular mention of another post–2000 LIHTC property in the Borough valued under the cost approach without adjustments for rental restrictions or federal tax credits. But Pacific Park pointed out that the property was not appropriate for comparison because its owners participated in the Section 515 Program,[60] which Pacific Park explained provides for a flexible ongoing federal subsidy to help the owners cope with high property taxes.

The Assessor asserted the valuation was not unequal given the appropriate comparison to the nearly 90 apartment complexes in the Borough appraised under the cost approach. The Board's finding that the Assessor's valuation was grossly disproportionate "because" of the failure to factor in recorded restrictions suggests that the Board compared the Apartments to the non-LIHTC apartment complexes, which are unencumbered by rental restrictions. This would be consistent with the Board's finding that the

**58.** We reiterate our earlier point that if the Board adjusts the Assessor's cost-approach valuation because of the rent restrictions, the Board must also clarify and explain its treatment of the federal tax credits in its analysis of the rent restrictions' impact on the Apartments' value. It seems to us that if rent restrictions are relevant to the cost-approach valuation analysis, the same would be true for any tax credits providing some economic advantage to offset the effect of the rent restrictions. But we leave the relevant considerations and determinations in the first instance to the Board.

**59.** Pacific Park also compared its property valuation to those of LIHTC properties in other western states that value this type of property based on rental restrictions. Pacific Park noted that some LIHTC properties are valued without consideration of rental restrictions by statute, but that courts and boards of equalization in other states have interpreted "full and true value" to allow for adjustment based on rental restrictions. The Board's oral and written findings do not mention how other western states value LIHTC properties.

**60.** Housing Act of 1949 § 515, 42 U.S.C. § 1485.

Assessor's valuation was excessive for the same reason. But given the cost-approach valuation of all the properties, the Board could not have found the valuation grossly disproportionate compared to other Borough apartment complexes unless it considered those properties' actual rental or fair market rental rates as well. There is no evidence in the record regarding those rental rates, except for Pacific Park's appraiser's testimony suggesting that the depressed housing market in Seward would make "up to [a] 50% reduction" in value reasonable due to economic obsolescence. The obvious implication from this testimony is that restricted rents at the Apartments might not be significantly less than current apartment rental rates in Seward, contradicting the argument that the Apartments were over-valued in comparison to other apartment complexes.[61]

Despite reviewing the parties' briefing and the record for clarification,[62] we cannot discern with any reasonable certainty what the Board used as comparison properties for its finding that the Assessor's valuation was "grossly disproportionate as compared to similar properties." We therefore remand to the Board for clarification and explanation of its decision on this issue and for further factual findings as it deems necessary.

## V. CONCLUSION

We AFFIRM the superior court's decision upholding the Board of Equalization's state law and borough code interpretation allowing the cost approach and the consideration of LIHTC rental restrictions in connection with that appraisal methodology. We VACATE the superior court's decision upholding the Board's final valuation and REMAND to the Board for findings that enable review of the basis for its decision.

---

**61.** Another implication from this testimony is that a reduction in the Apartment's value for economic obsolescence arising from the depressed housing market might render the valuations for all other apartment complexes excessive and unequal. But we leave the relevant consid-erations and determinations in the first instance to the Board.

**62.** *See Faulk,* 934 P.2d at 751 (noting court can look to record in reviewing sufficiency of agency's findings).